[Sac. No. 4930. In Bank.—February 20, 1936.]

MINNIE ROBERTS, Appellant, v. AUGUSTA BRAE et al., Respondents.

Charles L. Gilmore for Appellant.

Henry S. Lyon, Elwood Murphey and C. W. Pearson for Respondents.

WASTE, C. J.—In this action to quiet title the plaintiff appeals from a judgment granting such relief to the defendants in conformity with the allegations and prayer of their respective cross-complaints.

Plaintiff claims to be the record owner of lots 4 and 5 in block 9 of the town site of Diamond Springs, El Dorado County. The defendants are adjoining owners, being, respectively, the record owners of lots 3 and 6. In other words, the defendant Scheiber owns a lot that adjoins plaintiff's lot 4, and the defendant Brae owns a lot adjoining plaintiff's lot 5. This action is the result of a dispute over the location of the boundary lines separating the three ownerships.

Plaintiff's proof, offered subsequent to defendants' proof in support of their cross-complaints, consisted principally of a showing of record title to lots 4 and 5 as described in the official map of Diamond Springs and the field notes of the original survey. The evidence discloses, however, that the original map has been destroyed by fire and was not available upon the trial and that the field notes, which lay out the lots in each block with reference to ill-defined surrounding streets, fail to disclose the relation of said lots or blocks to other monuments or property and cannot be located on the ground. Plaintiff testified that she had a survey made, but she failed to offer any evidence tending to establish the location of any of the parcels of property involved.

The defendants have always admitted that plaintiff is the record owner of lots 4 and 5, excepting therefrom any por-

tion thereof within the boundaries of certain metes and bounds descriptions, to which they assert ownership. Defendants introduced in evidence deeds showing record title in them to lots 3 and 6 and established their payment of taxes for more than five years upon lands respectively assessed to them as lots 3 and 6. They also introduced a survey made at their request showing boundaries of the present occupancies. The testimony of the surveyor reveals the impossibility of reconciling the official field notes with the boundaries of such present occupancies. In addition, the defendants testified that the old stone buildings located on lots 3 and 6, and asserted to encroach on plaintiff's property, have been in their present positions for more than thirty-eight years and thirty-five years, respectively. The defendant Scheiber, owner of lot 3, testified that she had moved there thirty-eight years previously; that she was a native of the locality and had known of the buildings all of her life; that at one time there was fastened to the top of the building on lot 3 a stone monument reading, "L. Lepitt 1857", tending to indicate construction in that year; and that plaintiff had been the owner of lots 4 and 5 since 1923, approximately ten years prior to the commencement of this action, and had been in possession, as tenant, before that time. Defendant Brae testified that while she had purchased lot 6 in 1920, she had lived there about thirty-five years and "the stone building occupied the same position then as it does now". The surveyor called by defendants testified that the buildings were very old, one at least fifty years old. The trial judge viewed the premises. Upon the conclusion of the trial it was found that the defendants were the owners and in possession of the properties described by metes and bounds in their respective cross-complaints and that plaintiff was the owner and in possession of the property lying between said parcels.

Judgment was properly entered for the defendants on their respective cross-complaints. ■ The authorities indicate that in order to establish an agreed boundary line it is necessary to show that there was an uncertainty or belief of uncertainty in the location of the line, that there was an agreement, express or implied, fixing the line, and that there was an actual designation of the line upon the ground and occupation in accordance therewith. (*Muchenberger* v. *City of Santa Monica*, 206 Cal. 635, 642 [275 Pac. 803] ; *Ross* v. *Burk-*

*hard Inv. Co.,* 90 Cal. App. 201, 208 [265 Pac. 982].) The case last cited declares that "It is only when the owners of contiguous tracts of land are uncertain as to the real boundary which separates their respective properties, by mutual agreement, either express or implied, consent to accept a specified line as the true boundary, and thenceforth occupy and use their respective properties in accordance therewith for a considerable length of time that the contracting parties and their privies in title will be estopped from repudiating the agreed boundary."

However, in considering the nature and character of proof required to show such uncertainty and to establish such an agreement, the authorities are equally clear that in the absence of direct evidence, the same may be deduced from circumstances and may be inferred from the conduct of the parties, particularly from long acquiescence. In *Vowinckel* v. *N. Clark & Sons,* 217 Cal. 258, 260 [18 Pac. (2d) 58], it is stated: "It is not necessary that the agreement between the parties be an express one. It may be inferred or implied from their conduct, especially where the condition is acquiesced in for the period of the statute of limitations . . . 'A presumption that an agreement formerly was made as to the location of a boundary line may arise from the fact that one or both the adjoining owners have definitely defined such line by erecting a fence or other monument on it and that both have treated the same as fixing the boundary between them for such length of time that neither ought to be allowed to deny the correctness of its location'." This identical language also appears in *Southern Counties Gas Co.* v. *Eden,* 118 Cal. App. 582, 586 [5 Pac. (2d) 654], and in *Board of Trustees* v. *Miller,* 54 Cal. App. 102, 105 [201 Pac. 952]. The Vowinckel case, just above quoted from, is cited with approval in *Moniz* v. *Peterman,* 220 Cal. 429, 435 [31 Pac. (2d) 353].

In *Clapp* v. *Churchill,* 164 Cal. 741, 745 [130 Pac. 1061, 1062], it is declared that "the doctrine of an agreed boundary line and its binding effects upon the coterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line . . . This does not mean that the inference of an agreement arising from acquiescence does not support the added inference that the inferred agreement was based on a questioned boundary. The primary inference is of a

valid preexisting agreement and to be valid that agreement must have been based on a doubtful boundary line.'' This is recognized in *Board of Trustees* v. *Miller, supra,* p. 106.

■ Of course, the acquiescence must consist in acquiescence in the fence or monument as a boundary line and not mere acquiescence in the existence of the fence or monument as a barrier. (*Staniford* v. *Trombly,* 181 Cal. 372, 373, 375 [186 Pac. 599]; *Phelan* v. *Drescher,* 92 Cal. App. 393 [268 Pac. 465].) However, where, as here, the monument assumes the form of permanent buildings the acquiescence therein must necessarily be as a boundary line and not as a mere barrier. In *Phelan* v. *Drescher, supra,* a division fence was involved and there were circumstances sufficient to overcome the inference of an agreed boundary line arising from long acquiescence therein. In other words, the fence had been acquiesced in merely as a barrier and not as a boundary line. Such is not the present case. ■ Here there is no substantial evidence tending to rebut or overcome the presumption of an agreement raised by long acquiescence and occupation. As indicated above, the defendant Scheiber has been in possession for thirty-eight years and the defendant Brae and her predecessors for thirty-five years. Plaintiff has been the owner of her property for over ten years prior to the commencement of this action and in occupancy for a longer period. From other evidence it is apparent that the buildings, the lines and the possessions of the parties have been the same for a long period during which period there apparently have been no title disputes and no admissions that the lines were not true ones. In addition to long acquiescence and occupation, we have in the present case the existence of substantial and permanent improvements, owned by the defendants, upon the disputed pieces of land. Under the circumstances, we are satisfied that agreed boundary lines were established which entitled the defendants to their respective possessions. Other matters do not call for discussion.

The judgment is affirmed. The order denying a new trial is nonappealable and the purported appeal therefrom is therefore dismissed.

Thompson, J., Shenk, J., Seawell, J., Curtis, J., and Langdon, J., concurred.